1
2
3                     **UNITED STATES DISTRICT COURT**
4                          **DISTRICT OF NEVADA**
5                                    * * *
6    DANIEL LUCERO ORTIZ,                    Case No. 2:25-cv-01833-RFB-NJK
7                      Petitioner,                        **ORDER**
8        v.
9
10   MICHAEL BERNACKE, *et al.*,
11                     Respondents.

12          Before the Court is Petitioner Daniel Lucero Ortiz's Petition for Writ of Habeas Corpus

13   ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada

14   Southern Detention Center in the custody of the Federal Respondents. For the following reasons,

15   the Court grants the Petition.

16

17   **I.     INTRODUCTION**

18          This case is one of a growing number before this court challenging the federal

19   government's new policy of mandatory detention of all noncitizens charged with entering the

20   United States without inspection.[1] The policy is based on a new interpretation of the Immigration

21   _____

22          [1] This Court has already granted petitioners relief—both preliminary and habeas—in
     fourteen similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY, 2025
23   WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA,
     2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY,
24   2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY,
     2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY,
25   2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025
     WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-
26   MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL
     2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025
27   WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW
     (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL
28   3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK
     (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL

and Nationality Act (INA) by the executive branch, specifically 8 U.S.C. § 1225(b)(2)(A), as requiring the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention is mandatory no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate interest in their detention.

This sweeping new policy, which the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *22 (D Nev. Nov. 17, 2025) (finding that "the text and canons of statutory interpretation, legislative history, and long history of consistent agency practice, demonstrate . . . that the government's new interpretation and policy under [§ 1225(b)(2)(A)], is unlawful"); see also, e.g., Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding

---

3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

agency practice.") (collecting cases).

Petitioner challenges Federal Respondents' application of this policy to prolong his detention for months, saying that he is subject to § 1226(a), not § 1225(b)(2), and therefore eligible for release on conditional parole or bond. Petitioner further asserts that he is unable to obtain a review of his custody by an immigration judge in light of <u>Hurtado</u>.

For the reasons set forth below, the Court finds that Petitioner's detention without bond is unlawful under the INA and violates his due process rights. The Court thus orders Petitioner be provided a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. If a bond hearing is not conducted within seven days, Petitioner shall be released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

## II.    BACKGROUND

### A.  Petitioner Daniel Lucero Ortiz

The Court makes the following findings of fact relevant to Petitioner. Petitioner has resided in the United States for over two years and lives in Las Vegas. He is currently detained by Respondents at Nevada Southern Detention Center after having been arrested by ICE in Las Vegas on September 3, 2025.

On September 3, 2025, Petitioner was arrested for an alleged domestic violence offense. Outside of this charge, which is currently pending in Las Vegas Municipal Court, Petitioner has no criminal history. He was released from Las Vegas Police Department custody, then apprehended by ICE officials. He has been charged by ICE as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), *i.e.*, as someone who entered the United States without inspection. Following his arrest, ICE issued a custody determination to detain Petitioner without an opportunity to post bond or be released on other conditions. He has not been provided a bond hearing to-date.

Petitioner has two U.S. citizen children—one-year old twins—with his girlfriend. Prior to his detention, Petitioner was working as a cook for Born and Raised Bar for approximately one year. Petitioner is Venezuelan and currently has a pending application for asylum with the Las Vegas Immigration Court based on the persecution he faced in Venezuela as a result of his political

opinions. He is awaiting his final hearing on the merits at the time of this Order.

### B.  Legal Background

Mr. Lucero Ortiz challenges his continued detention without consideration for bond under § 1225(b)(2), stating that he is not an "applicant for admission," and should be subject to the discretionary detention provision, § 1226(a). The Court incorporates by reference the legal background of detention authority under the INA and the government's new mandatory detention policy, as provided in its recent ruling in <u>Escobar Salgado</u>. 2025 WL 3205356, at *2-6.

### III.   PROCEDURAL HISTORY

On September 29, 2025, Petitioner Lucero Ortiz filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Michael Bernacke, in his official capacity as the Director of the Salt Lake City Field Office of ICE's Enforcement and Removal Operations Division; John Mattos, in his official capacity as Warden of NSDC; Kristi Noem, in her official capacity as Secretary of DHS; Pamela Bondi, in her official capacity as Attorney General of the United States; DHS as the federal agency responsible for implementing and enforcing the INA; and EOIR as the federal agency responsible for implementing and enforcing the INA in removal proceedings. ECF No. 1.

This case was initially assigned to the Honorable Judge Miranda M. Du, but on October 24, 2025, was transferred to the undersigned judge as related to two pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 15.

On October 28, 2025, counsel for Respondents filed a notice of appearance. ECF No. 17. Respondents' counsel file a Motion to Extend Time to file their answer to the Petition on October 28, 2025, requesting an extension from October 29, 2025 to October 31, 2025. ECF No. 18. On October 31, 2025, Respondents filed their Response (answer) on October 31, 2025. ECF No. 19. A hearing was held on the instant matter before this Court on October 30, 2025.

This Court's Order follows.

### IV.   LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-nrelated detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citing 28 U.S.C. § 2243).

## V.    DISCUSSION

### A.  Jurisdiction

As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10. Respondents do not challenge this Court's jurisdiction over the instant matter.

### B.  The Statutory Question

Petitioner Lucero Ortiz challenges the lawfulness of his detention under the INA. While Respondents assert that § 1225(b)(2) applies to Petitioner and mandates his detention without a

bond hearing, Petitioner argues Respondents' interpretation of the statutory scheme of §§ 1225 and 1226 is flawed and in fact violates § 1226's own implementing regulations. This Court agrees with Petitioner and incorporates by reference its holding and findings in <u>Escobar Salgado v. Mattos</u>. 2025 WL 3205356, at *10-22.

Petitioner Lucero Ortiz is a longtime U.S. resident—he has been in the United States for over two years—who was arrested and detained by ICE in Las Vegas which is far from any port of entry. In addition, Petitioner has no criminal history besides the arrest that gave rise to his current detention; he has no criminal convictions that would subject him to detention under § 1226(c). Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. <u>Id.</u>

**C. Due Process**

Petitioner also challenges his ongoing detention without the opportunity for release on bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge on this basis. Respondents assert that Petitioner's due process rights are not violated by detention without opportunity for release on bond, citing to the Supreme Court's upholding of detention without bond hearings under § 1226(c) in <u>Demore</u>. <u>See</u> ECF 7 at 10 (citing <u>Demore</u>, 538 U.S. at 522). However, <u>Demore</u>'s holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. <u>Demore,</u> 538 U.S. at 526-27. In addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." <u>Id.</u> at 513-14. That interest is plainly not implicated in this case, where Petitioner has no convictions nor any arrest history beyond that which led to his detention by ICE. Furthermore, the government has not shown it has an individualized purpose in detaining Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in

Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the opportunity for release on bond in violation of his procedural and substantive due process rights.

### 1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an

- 7 -

1

IJ upon a showing of materially changed circumstances).

2

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest

3

through the procedures used, and the probable value, if any, of additional procedures." Mathews,

4

424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his

5

detention pending the conclusion of his removal proceedings without the opportunity for release

6

on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency

7

officials have sole, unguided, and unreviewable discretion to detain Petitioner without any

8

individualized showing of why his detention is warranted, nor any process for Petitioner to

9

challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this

10

lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond

11

hearing for a petitioner prior to Hurtado and found that the government had not established a

12

justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No.

13

2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem,

14

No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Likewise, given that

15

Petitioner Lucero Ortiz has no criminal convictions, has deep financial, familial, and community

16

ties in the country, and that Respondents have not asserted he is dangerous or a flight risk, it is

17

very likely that he is being arbitrarily and unjustifiably deprived of his liberty.

18

The additional procedures afforded under § 1226(a), including an individualized custody

19

redetermination by an immigration judge, i.e., a bond hearing, substantially mitigate the risk of

20

erroneous deprivation of Petitioner's liberty, because those procedures require the government to

21

establish that Petitioner presents a flight risk or danger to the community. This would account for

22

the constitutional requirement that "once the flight risk justification evaporates, the only special

23

circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's

24

dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a

25

bond hearing can further be appealed, and Petitioner could seek additional custody

26

redeterminations based on changed circumstances, such that the outcome of a bond hearing would

27

be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by

28

a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures

available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). As such, the second <u>Mathews</u> factor also weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

The third and final <u>Mathews</u> factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." <u>Rodriguez Diaz</u>, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." <u>Demore</u>, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention. <u>Hernandez v. Sessions</u>, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the <u>Mathews</u> factors weigh heavily in factor of Petitioner, and therefore, his detention without the opportunity for release on bond violates his procedural due process rights.

2. <u>Substantive Due Process</u>

- 9 -

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." <u>Zadvydas</u>, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is currently detained in violation of his substantive due process rights. <u>See</u> <u>Escobar Salgado</u>, 2025 WL 3205356, at *25.

**D.  Scope of Relief**

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." <u>Id.</u> "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" <u>Id.</u> (quoting 28 U.S.C. § 2243).

Here, Petitioner Lucero Ortiz faces the specific harm of being detained for months without a bond hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing within seven days. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**E.  Attorneys' Fees**

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

**VI.     CONCLUSION**

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY**

- 10 -

1    **ORDERED** that Petitioner Daniel Lucero Ortiz's Petition for Writ of Habeas Corpus is

2    **GRANTED**.

3        **IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond

4    hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the Court's Order granting

5    the Petition, no later than **November 26, 2025**.

6        **IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner

7    release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. §

8    1225(b)(2).

9        **IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by

10   **November 26, 2025**, Petitioner shall be released until it is determined that his detention is

11   warranted under 8 U.S.C. § 1226(a).

12       **IT IS FURTHER ORDERED** that the parties shall file a status report on the status of

13   Petitioner's bond hearing by **December 1, 2025**. The status report shall detail if and when the bond

14   hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

15

16       **DATED:** November 19, 2025.

17

18                                                    _____

19                                                    **RICHARD F. BOULWARE, II**
                                                      **UNITED STATES DISTRICT JUDGE**
20

21

22

23

24

25

26

27

28